# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEWELL BARBER, | 1:10-cv-00484 OWW GSA HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| J. D. HARTLEY, Warden, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**RELEVANT HISTORY**[1]

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) following his conviction in Riverside County Superior Court in 1983 of second degree murder. Petitioner is serving a sentence of fifteen years to life with the possibility of parole.

Petitioner does not challenge his underlying conviction; rather, he claims the California Board of Parole Hearings ("Board") violated his due process rights in its 2009 decision finding

---

[1] This information is taken from the state court documents attached to Respondent's answer and are not subject to dispute.

1

1  Petitioner unsuitable for parole.  Petitioner contends there was no evidence to support the finding
2  that he currently posed an unreasonable risk of danger to the public if released.  He contends that
3  each ground relied upon by the panel lacked evidentiary support.  He claims the Board's
4  continued reliance on the commitment offense violates due process. He alleges his offense was
5  not particularly egregious, and he has served the maximum term for his offense.  He contends
6  there was no nexus between his offense and his parole risk. He claims the Board's decision was
7  not based on some evidence as required in In re Lawrence, 44 Cal.4th 1191, 1202, 1204 (2008).
8  And last, he claims the application of Proposition 9 in his case constitutes an ex post facto
9  violation.

10   Petitioner filed a habeas court petition challenging the Board's 2009 decision in the
11  Riverside County Superior Court on August 13, 2009.  The petition was denied on August 20,
12  2009, for failure to state a prima facie factual case.  The superior court also determined that
13  "there is some evidence supporting the Parole Board's decision."  Petitioner next filed habeas
14  petitions in the California Court of Appeal, Fourth Appellate District, and the California
15  Supreme Court.  The petitions were summarily denied on September 18, 2009, and December 2,
16  2009, respectively.

17   Petitioner filed the instant federal petition for writ of habeas corpus on March 8, 2010.
18  Respondent filed an answer to the petition on June 1, 2010.  Petitioner filed a traverse on June
19  16, 2010.

**STATEMENT OF FACTS**[2]

21   On September 7, 1982, Petitioner and a couple of his friends and crime partners were
22  sitting around a table discussing the victim, James Edward Bailey.  Petitioner and these
23  individuals knew each other as a result of drug dealings and sales.  One of the individuals,
24  McCauley, stated he was going to kill Bailey.  He produced a .22-caliber revolver, put it in his
25  front pants pocket, left, came back again, and said he was going to kill Bailey.  He came back
26  again and said he couldn't do it because there were too many people around.  Shortly thereafter,

---

[2] This information is derived from the summary of the crime set forth in the Board's decision. (See Pet'r's Pet. Ex. A at 67-69.)

Petitioner left the apartment and returned a short time later advising everyone that Bailey was in his apartment. McCauley got up, left the apartment again, and stated he was going to kill Bailey. A short time later there was a loud thud noise. Petitioner went up to Bailey's apartment, came back, and told the rest that Bailey was lying on the floor. Later that day, Petitioner and Jones made contact with McCauley. McCauley stated Petitioner owed him $100.00 as part of the $300.00 that McCauley had been promised for killing Bailey. Bailey had been shot twice in the back of the head over a drug deal.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the

adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.    Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

II.     Review of Petition

There is no independent right to parole under the United States Constitution; rather, the right exists and is created by the substantive state law which defines the parole scheme.  Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010). "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state statutes may create liberty interests in parole release that are entitled to protection under the Due Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is suitable for parole is controlled by the following regulations:

>    (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
>    (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b). Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

>    (1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:
>
>        (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
>        (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
>        (C) The victim was abused, defiled or mutilated during or after the offense.
>        (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
>        (E) The motive for the crime is inexplicable or very trivial in relation to the offense.
>
>    (2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.
>
>    (3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.'
>
>    (4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.
>
>    (5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.
>
>    (6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

>    Section 2402(d) sets forth the circumstances tending to show suitability which include:

>(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.
>
>(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.
>
>(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.
>
>(4) Motivation for Crime. The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.
>
>(5) Battered Woman Syndrome. At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.
>
>(6) Lack of Criminal History. The prisoner lacks any significant history of violent crime.
>
>(7) Age. The prisoner's present age reduces the probability of recidivism.
>
>(8) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.
>
>(9) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing. Cal. Penal Code § 3041.5. If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute. Id. In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5. The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential. In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause. Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010). Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable

or was based on an unreasonable determination of the facts in light of the evidence. Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.

In addition, "the circumstances of the commitment offense (or any of the other factors related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to the determination that a prison remains a danger to the public. It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." In re Lawrence, 44 Cal.4th at 1212.

"In sum, a reviewing court must consider 'whether the identified facts are *probative* to the central issue of *current* dangerousness when considered in light of the full record before the Board or the Governor.'" Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in original) (citing Hayward v. Marshall, 603 F.3d at 560).

The California Supreme Court and the appellate court summarily denied Petitioner's claims. The Riverside County Superior Court provided the only reasoned decision, to the extent it can be considered such; it merely stated: "There is some evidence supporting the Parole Board's decision." (See Resp't's Ex. 3.)

In denying parole, the Board relied on the circumstances of the commitment offense,

7

Petitioner's past criminal history, his lack of insight into the offense, his failure to upgrade vocationally, and his lack of self-help programming.

The commitment offense involved Petitioner participating in an execution-style murder over a drug deal. The Board determined the motive for the crime was inexplicable in that there was no identifiable motive. Cal. Code Regs., tit. 15, § 2402(c)(1)(E). The Board also found that the offense was carried out in a calculated, dispassionate, and execution-style manner. Cal. Code Regs., tit. 15, § 2402(c)(1)(B). This finding was based on the fact that the crime partners had planned the murder and then accomplished the murder by shooting the victim twice in the back of the head. In light of these facts, there was some evidence to support the Board's determination that the offense was especially heinous, atrocious or cruel.

The Board also noted Petitioner's prior criminal history which involved drunk driving, possession of property without the owner's consent, contributing to the delinquency of a minor, and a drug arrest. None of these crimes involved violence and therefore could not constitute a negative factor pursuant to Cal. Code Regs., tit. 15, § 2402(c)(2); however, the information could be considered relevant under Cal. Code Regs., tit. 15, § 2402(b).

The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682 (2002). However, in cases where prisoners have served their suggested base terms and have demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole. In re Lawrence, 44 Cal.4th 1191, 1211 (2008). In this case, the factors of the commitment offense and past criminal history were over twenty-six years old at the time of the parole hearing. As noted above, unless the record also establishes that something in Petitioner's history or current demeanor and mental state indicates that the implications regarding his dangerousness that derive from his commission of the commitment offense remain probative, the crime itself cannot provide some evidence of dangerousness. Id. at 1214.

Here, the Board also relied on Petitioner's lack of insight. The Board noted that Petitioner appeared to minimize his involvement. He had altered his version of the offense over

time, and at this particular hearing, he submitted to the official record essentially stating he would accept it as accurate since it is the official version that everyone agrees on. (See Pet'r's Ex. A at 22.) He stated he was guilty of the crime so he would accept whatever version was acceptable. Given Petitioner's responses, there is some evidence of a lack of insight. In addition, the psychological report also found that Petitioner's lacked insight into the crime. (Id. at 32.) "An inmate's version of the offense may indicate a lack of insight and provide a nexus between the offense and his current dangerousness." In re Shaputis, 44 Cal.4th 1241, 1260 (2008).

The Board also found problematic Petitioner's lack of self-help programming with respect to drug and alcohol abuse. Petitioner admitted he had abused drugs and alcohol in the past. He also admitted he was a drug dealer. The crime itself occurred because of a drug deal. Petitioner stated he had previously participated in structured programming such as Alcoholics Anonymous; however, he had not done so in the recent past. He stated he did not believe he needed it, despite numerous recommendations by previous board panels and the Governor that such programming was essential given Petitioner's history of involvement with drugs and alcohol.

Similarly, the Board found troubling Petitioner's lack of vocational training. Petitioner stated he had various skills that he could use to find employment if released. However, the Board pointed out that Petitioner had not upgraded vocationally for 18 years. The Board did not find Petitioner's reassurances credible since his skills were so old and his income prior to prison came from drug dealings. The Board also found disturbing that Petitioner had been advised by prior panels and the Governor that he needed to upgrade vocationally to demonstrate he would not fall back to a life of crime, but Petitioner insisted on not doing so.

After considering the factors in favor of suitability, the Board concluded that the positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability. The Board determined that the circumstances of Petitioner's commitment offense, along with his lack of insight, his lack of self-help programming, and his failure to upgrade vocationally, were more probative of a danger to the public should Petitioner be released. The state courts' determination

that there was some evidence to support the Board's 2009 decision is not an unreasonable application of California's some evidence standard, nor an unreasonable determination of the facts in light of the record.  Accordingly, federal habeas corpus relief is unavailable.

Petitioner also contends the Board's implementation of Proposition 9 violates the constitutional prohibition against Ex Post Facto laws.  The Ex Post Facto Clause of the United States Constitution prohibits the states from passing any "ex post facto law," a prohibition that "is aimed at laws 'that retroactively alter the definition of crimes or increase the punishment for criminal acts.'" Cal. Dept. of Corrections v. Morales, 514 U.S. 499, 504 (1995); see also Weaver v. Graham, 450 U.S. 24, 28 (1981) (providing that "[t]he ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'"). The United States Supreme Court has held that "[r]etroactive changes in laws governing parole of prisoners, in some instances, may be violative of this precept." Garner v. Jones, 529 U.S. 244, 250 (2000).

In this case, Petitioner complains that Proposition 9 has altered his chance for parole from "at least 50% to 0%, i.e. death in prison." (See Pet. at 20.)  He claims that the Board has invoked Cal. Penal Code § 3041.2 to eliminate any chance at parole for inmates convicted of murder.  Petitioner's claim is not well-taken.  Cal. Penal Code § 3041.2 merely provides that during the thirty days following a grant, denial, revocation or suspension of parole by the parole board of an inmate serving an indeterminate term for murder, the Governor shall review certain materials in determining whether to confirm, reverse or modify the parole board's decision.  The statute does not deny parole to murderers.  The same guidelines for determining parole suitability set forth in Cal. Penal Code § 3041 apply to the Governor.  Shaputis, 44 Cal.4th 1241.  Since Petitioner does not demonstrate an ex post facto violation, the claim must be denied.

**RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     The instant petition for writ of habeas corpus be DENIED; and

2.     The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 1, 2010**            /s/ **Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE